UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LEURY THEN ROSARIO,<br>         Defendant. | No. 25-MJ-6114-MPK |

### AFFIDAVIT OF DEA TASK FORCE OFFICER BRIAN W. SIMPKINS IN SUPPORT OF PRE-TRIAL DETENTION

I, Brian W. Simpkins, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Massachusetts State Police ("MSP") Trooper since 2006, and a Sergeant since October 2023. As a Trooper, I was initially assigned to patrol out of the Framingham, Sturbridge, and Boston Barracks, and then to the Community Action Team in the city of Boston working in a high crime area focusing on gang and drug activity. Since July 2016, I have been assigned as a Task Force Officer ("TFO") to the Organized Crime Drug Enforcement Task Force ("OCDETF") Boston Strike Force, which is a strike force incorporating various law enforcement agencies, including the Drug Enforcement Administration ("DEA"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement Homeland Security Investigations ("HSI"), and the U.S. Marshals Service ("USMS"), among other agencies

2.  I make this affidavit in support of the pre-trial detention of defendant Leury Then ROSARIO. The facts in this affidavit come from my personal observations and information

1

obtained from other investigators and witnesses. My interpretations of conversations, conduct, and events detailed herein are based on my training and experience and knowledge of the investigation. This affidavit is intended to present facts supporting pre-trial detention of the Defendants, and does not set forth all of my knowledge about this matter.

### Prior History

3.  On February 24, 2025, the Honorable M. Page Kelley, United States Magistrate Judge, District of Massachusetts, authorized a criminal complaint charging ROSARIO with conspiracy to distribute and to possess with intent to distribute 400 grams of more of a mixture or substance containing fentanyl and methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vi). No. 25-MJ-6114-MPK. The Court also authorized warrants to search ROSARIO's primary residence located at 20 Crestshire Drive in Lawrence, Massachusetts ("Target Location 1"), and ROSARIO's stash location located at 430 Essex Street, **First Floor**, Lawrence, Massachusetts ("Target Location 2"). Nos. 25-6115 & 6116-MPK.

4.  On February 25, 2025, Magistrate Judge Kelley issued additional warrants to search 430 Essex Street, **Basement** ("Target Location 3"), and 430 Essex Street, **Third Floor** ("Target Location 4"). Nos. 25-6118 & 6119-MPK.

### Arrest and Search

5.  On February 25, 2025, investigators executed the arrest of ROSARIO after he exited the rear door to 430 Essex Street and departed in his vehicle that was parked in the lot behind 430 Essex Street. At the time he was placed under arrest, ROSARIO had five cell phones and a satchel, which contained his Dominican photo identification and MassHealth card, along with a key ring with several keys on it. After placing ROSARIO under arrest, investigators executed the search warrants at 430 Essex Street.

6.      The first floor of 430 Essex Street, which purported to be a multiservice business, had a front room with a retail counter that was empty and did not appear to be an open business. In the back room of the first floor behind the retail counter area appeared to be a gambling room, with two large casino-style poker tables and video poker-type machines. Investigators also observed a high-end video surveillance system throughout the first floor, inside the gambling room, in the hallways, and outside. Within the first floor, investigators found, among other things, cash and four plastic wrappers—one of which had a white powdery residue—with different designs on them that are consistent with wrappers for kilograms of drugs, based on my training and experience.

7.      Investigators on scene spoke with the owner of 430 Essex Street, who also resides in the building. The owner identified ROSARIO as the person who rents the first floor (Target Location 2). The owner further told investigators that the basement of 430 Essex includes a common space as well as a storage room with a closed door that is also rented and used by ROSARIO (Target Location 3).[1] Investigators on scene also spoke with the property manager for 430 Essex Street. The property manager also identified ROSARIO as the person who pays the rent for the first floor. The property manager further stated that ROSARIO also paid an extra amount to rent the storage room in the basement with the closed door (Target Location 3), and that ROSARIO stated that he wanted the storage space to store tables and chairs. The property manager stated that ROSARIO paid the rent for both the first floor and the basement in cash.

8.      The basement storage room (Target Location 3) appeared to be new construction relative to the rest of the basement area. Upon entering the basement storage room, investigators

---

[1] The landlord provided consent to search the common spaces in the basement area.

observed heavy powder residue on items within the storage area and several blenders on the floor. The storage unit also contained two large, locked storage boxes, which contained tools and equipment commonly used in drug processing or manufacturing locations, such as respirators, gloves, drug packaging materials, scales, additional blenders, and other tools. Inside the storage area, investigators found a small remote control with an extendable antenna, which investigators recognized as similar in appearance to a remote control found in ROSARIO's vehicle during a prior motor vehicle stop that led to his arrest. Investigators, based on their training and experience, believed that the remote control accessed a hidden area within the room. When investigators actuated the remote control, an audible alarm sounded and a wall within the storage area popped open revealing a hidden closet.

9. The following is a photograph of the hidden closet inside the storage area (Target Location 3) after the trap wall was opened:



10. Inside the hidden room within the storage area, investigators seized the following items, among other things:

   a. Over 16 kilograms of counterfeit pills, in various colors and sizes, containing controlled substances;

   b. A brick-shaped object of a white powdery substance, weighing approximately a kilogram, that field tested positive for the presence of cocaine;

   c. Over two kilograms of a suspected fentanyl pressed into 10-gram units, commonly referred to as "fingers" in retail drug trafficking;

   d. Over two kilograms of suspected fentanyl powder in large bags;

   e. Over 25 pounds of loose powders in various colors, believed to include cutting agents used with narcotics;

   f. A commercial pill press used to press counterfeit pills, including over 50 pill die casts with designs to counterfeit Percoet, Xanax, Adderall, and others;

   g. Multiple kilogram presses, as well as branded stamps used to imprint logos onto kilograms of narcotics; and

   h. The following firearms:

      i. One Glock Model 33 .357 caliber semiautomatic handgun loaded with six rounds of ammunition;

      ii. One High Point .380 caliber semiautomatic handgun loaded with eight rounds of ammunition;

      iii. One Ruger .380 caliber semiautomatic handgun loaded with six rounds of ammunition;

    iv.  Two Glock-style personally made firearms (also known as "ghost guns") with no serial numbers loaded with ten and nine rounds of ammunition respectively; and

    v.  One AR-15 style rifle chambered with .458 SOCOM ammunition loaded with eight rounds of ammunition in a large-capacity magazine.

11. The following is a photo of some of the items seized from Target Location 3:



12. The following is a photograph of the commercial pill press seized from Target Location 3:



13. The following are photographs of the assorted pill die casts used with the pill press and kilogram stamps used with the kilogram press, all seized from Target Location 3:





14. The keys taken from ROSARIO's satchel at the time of his arrest opened the following doors at 430 Essex Street: the first floor (Target Location 2), the door leading down to the basement and the door to the storage area in the basement (Target location 3), and the door to Apartment 3 on the third floor (Target Location 4).

15. Based on information provided to me by other law enforcement agents, I know that ROSARIO is a citizen of the Dominican Republic and is not lawfully present in the United States.

I, Brian W. Simpkins, hereby state under penalty of perjury that the contents of this affidavit are true and correct to the best of my knowledge, information, and belief.

                                                Respectfully submitted,

                                                _____
                                                Brian W. Simpkins, Task Force Officer
                                                Drug Enforcement Administration

Dated: February 27, 2025